**Electronically Filed
Intermediate Court of Appeals
CAAP-17-0000476
22-NOV-2019
07:52 AM**

NO. CAAP-17-0000476

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


CHAD LOS BANOS, Appellant-Appellee, v.
HAWAII LABOR RELATIONS BOARD, STATE OF HAWAII;
DEPARTMENT OF PUBLIC SAFETY, STATE OF HAWAII,
Appellees-Appellees,
and
UNITED PUBLIC WORKERS, AFSCME LOCAL 646,
AFL-CIO, Union Appellee-Appellant


APPEAL FROM THE CIRCUIT COURT OF THE THIRD CIRCUIT
(CIVIL NO. 16-1-0274)


MEMORANDUM OPINION
(By: Fujise, Presiding Judge, Leonard and Hiraoka, JJ.)

Appellee-Appellant United Public Workers, AFSCME, Local 646, AFL-CIO (the **Union**) appeals from the June 15, 2017 Final Judgment (**Judgment**) entered by the Circuit Court of the Third Circuit (**Circuit Court**)[1] in favor of Appellant-Appellee Chad Los Banos (**Los Banos**) and against the Union, Appellee-Appellee the State of Hawai'i, Department of Public Safety (**DPS**), and Appellee-Appellee the Hawai'i Labor Relations Board, State of Hawai'i (2016-008) (**Board**). The Union also challenges the

---

[1] The Honorable Greg K. Nakamura presided.

Circuit Court's May 19, 2017 Decision and Order on Appeal (**Order Remanding to the Board**).

This case arises out of Los Banos's numerous absences as a correctional officer, purportedly in violation of a Memorandum of Understanding on Attendance Program (**MOU**), which memorialized an agreement between the Union and the DPS regarding employee attendance (**Attendance Program**). As a result of his absences, Los Banos was deemed to have resigned from his position with DPS. Los Banos filed a prohibited practices complaint (**Complaint**) against DPS and the Union, which a two-member majority of the Board dismissed after Los Banos presented his case-in-chief. On appeal, the Circuit Court vacated the Board's decision and remanded for entry of appropriate findings of fact and conclusions of law in support of its decision. On secondary appeal, the Union requests that this court vacate the Circuit Court's Judgment and Order Remanding to the Board and dismiss Los Banos's appeal. We affirm for the reasons stated herein.

I.   BACKGROUND

A.   The MOU

On July 30, 2010, DPS and the Union executed the MOU, which implemented the Attendance Program as applicable to all Adult Correctional Officers (**ACOs**) in Bargaining Unit 10 of the Union. The MOU stated in pertinent part:

> WHEREAS, the EMPLOYER and UNION recognize that attendance ultimately affects the safety and health of those staff who show up for work, as well as the safety and health of inmates and general public;
>
> WHEREAS, the EMPLOYER and UNION wish to resolve the matter and will hold Section 37.17b., Bargaining 10 Agreement, in abeyance with the implementation of this program;

2

WHEREAS, the EMPLOYER and UNION, in resolving the matter, agrees to hold in abeyance Section 37.04b., and 38A.11;

NOW, THEREFORE, the EMPLOYER and UNION agree as follows:

1.   <u>Unless specifically exempted below, this program will apply to any absence from work without pay</u> [(LWOP)], with or without authorization.

. . . .

4.   When [DPS] decides to remedy an Employee on LWOP as provided by this document, such action shall be taken as follows:

   a.   Each day of leave without pay (authorized or unauthorized), including partial LWOP day, shall be considered as one (1) LWOP/incident.

   b.   Each day shall be considered as leave without pay for payroll purposes and each day shall be considered as one incident and result in the following remedy and schedule:

| Levels of LWOP Day/Incident | Required Action |
|---|---|
| 1st | Two (2) consecutive days of work |
| 2nd | Four (4) consecutive days of work |
| 3rd | Six (6) consecutive days of work |
| . . . | |
| 15th | Resignation with Stipulation that Employee not seek re-employment with [DPS] |

. . . .

6.   <u>If the Employee does not show up/report for work during the imposed Required Action schedule, then [DPS] shall conduct an investigation</u> pursuant to [DPS]'s investigative process developed to manage Section 38A.11 of the Bargaining Unit 10 Agreement.

The employee must still serve and complete the required number of work days imposed on the current required action.

<u>Once a determination is made that the Employee did not show up/report for work in accordance with the Required Action schedule, the remedy is to impose the next scheduled Required Action period per LWOP day/incident, up to and including 15th, resignation with stipulation that Employee shall not seek re-employment with [DPS]</u>.

7.   The schedule of incident/required action shall be counted continuously for a period of two (2) years retroactive from the date of the most current violation.

8.   Only those valid claims for federal and state benefits shall be exempt from this program, including military leave, family and medical leave act, worker's

3

compensation, and TDI. Such exemption shall be for the purpose and period of the specific leave of absence only. During the exemption, the Employee who does not have accumulated sick leave shall have the option to use accumulated vacation leave or compensatory time as applicable.

. . . .

9.  Only those valid claims for LWOP resulting from catastrophic illness (e.g. cancer), injury (including serious medical procedures, e.g. surgery). [sic] Critical/serious illness or impairment which renders an employee unable to perform one or more activities of daily living as noted in Section 38A.08i.1. through and including 38A.08i.7, or other illnesses or circumstances as determined by the Department Head, or designee shall be exempt from this program.

. . . .

This MEMORANDUM OF UNDERSTANDING shall become effective on September 1, 2010 and shall remain in effect until June 30, 2011, unless the parties mutually agree to extend the duration of this MEMORANDUM OF UNDERSTANDING.

(Emphasis added).

B.   The Agency Proceedings

On March 7, 2016, Los Banos, an ACO with DPS prior to his resignation, filed the Complaint with the Board, alleging that DPS and the Union engaged in prohibited practices in violation of Hawaii Revised Statutes (**HRS**) § 89-13 (2012).[2] In

---

[2]   HRS § 89-13 states, in pertinent part:

**§ 89-13 Prohibited practices; evidence of bad faith.** (a) It shall be a prohibited practice for a public employer or its designated representative wilfully to:

. . . .

(6)   Refuse to participate in good faith in the mediation and arbitration procedures set forth in section 89-11;
(7)   Refuse or fail to comply with any provision of this chapter;
(8)   Violate the terms of a collective bargaining agreement[.]

. . . .

(b)   It shall be a prohibited practice for a public employee or for an employee organization or its designated agent wilfully to:

(1)   Interfere, restrain, or coerce any employee in the exercise of any right guaranteed under this chapter;

. . . .

(continued...)

pertinent part, the Complaint alleged that from January through March 2015, Los Banos was frequently absent from work, because of severe and debilitating emotional distress and depression he was experiencing due to his ongoing divorce and a co-worker's suicide in December 2014. At some point, Los Banos applied for leave pursuant to the federal Family and Medical Leave Act (**FMLA**)[3] and the Hawai'i Family Leave Act (**FLA**).[4] His request was granted, in part, to begin March 16, 2015. On or about April 30, 2015, Los Banos became aware that an investigation was being conducted with respect to his absences from work. Los Banos subsequently received a letter from DPS, dated May 26, 2015, which identified a total of twenty days of "leave without pay" and stated that his absences would result in his resignation effective June 15, 2015, in accordance with the Attendance Program and MOU.

On June 19, 2015, the Union filed a "Step 1" grievance on behalf of Los Banos, alleging violations of the terms of the MOU. DPS rejected the grievance on November 2, 2015. On January 21, 2016, the Union notified Los Banos by letter that:

> As the affected employee, the Union is informing you that it is submitting the above-cited grievance to arbitration. However, the decision to arbitrate is subject to further review that may result in the grievance being withdrawn from arbitration.

---

[2](...continued)
- (3) Refuse to participate in good faith in the mediation and arbitration procedures set forth in section 89-11;
- (4) Refuse or fail to comply with any provision of this chapter; or
- (5) Violate the terms of a collective bargaining agreement.

[3] See 29 U.S.C. Chapter 28.

[4] See HRS Chapter 398.

On February 1, 2016, the Union informed Los Banos that it was withdrawing his arbitration request based on "insufficient proof that there is a violation of the CBA," but the Union did not otherwise notify or discuss with Los Banos its intention to withdraw the request for arbitration and did not inform him of any deadlines in the grievance and arbitration process.

Based on these allegations, Los Banos claimed, *inter alia*, that DPS engaged in prohibited practices by violating the terms of the MOU and Attendance Program, by failing to approve his request for FMLA leave for the entire period during which he was suffering from debilitating emotional distress and, also, by deliberately failing to notify him that his absences were triggering the Attendance Program until after he was subject to resignation. As the basis for his prohibited practices claim against the Union, Los Banos asserted that the Union failed in its duty to represent him in his grievance by failing to contest the DPS's violations of the terms of the MOU and by failing to inform him of its intent not to pursue his grievance to arbitration. Los Banos sought reinstatement without loss in seniority, fringe benefits, back pay, general and special damages, and attorneys' fees and costs, with interest.

DPS and the Union filed answers to the Complaint. On March 30, 2016, DPS filed a Motion to Dismiss Prohibited Practices Complaint (**Department's Motion to Dismiss**) and, on April 1, 2016, the Union also filed a Motion to Dismiss Complaint (**Union's Motion to Dismiss**). Los Banos filed oppositions to both motions, reiterating the allegations in his Complaint and arguing

that he had adequately pled prohibited practices claims against both DPS and the Union.

The Board heard the motions together at a hearing on April 12, 2016. The Board orally denied the motions to dismiss, in part, determining that questions of fact existed with respect to the Union's breach of its duty of fair representation and whether Los Banos was properly disallowed an exemption from the Attendance Program under Paragraphs 8 and 9 of the MOU.[5]

The Board noted it was not making a ruling with respect to the MOU's "implementation and application to Mr. Los Banos' specific situation," and that "there may be questions as to the validity of the MOU at the time of its application to Mr. Los Banos." The Board then held the following exchange with counsel for the Union:

> [COUNSEL]: . . . . The State Director in his declaration stated that the MOU is in effect. Is the Board taking the position that it's been extended by the parties?
>
> CHAIRMAN KOMATSUBARA: Right. Well, this is something that, you know, I'm sure in your proof of your case you'll put the MOU into evidence and establish its validity.
>
> [COUNSEL]: With respect to its current validity, or with respect to its validity at the time it was adopted?
>
> CHAIRMAN KOMATSUBARA: At the time it was implemented with respect to Mr. Los Banos.
>
> [COUNSEL]: Are you talking about the 2011 application to him or are you talking about the 2015 application to him?
>
> CHAIRMAN KOMATSUBARA: For all the times that were counted when the MOU -- the 15 steps were applied to Mr. Los Banos.
>
> [COUNSEL]: Okay. So I take it that the issues of fact relate to whether or not he was out on family leave and properly so?
>
> CHAIRMAN KOMATSUBARA: That is also an issue, yes.

---

[5] The Board did not issue a separate written decision but incorporated its ruling on the motions into its final order.

The Board held hearings on the merits of the Complaint on April 14 and 19, 2016. The Board admitted into evidence all exhibits submitted by each of the parties, with the exception of the declaration of the State Director for the Union, Dayton M. Nakanelua (**Nakanelua Declaration**).

Los Banos presented himself and Warden Peter Cabreros (**Warden Cabreros**) as witnesses. In short, Warden Cabreros testified as to his familiarity with the MOU and that the terms of the MOU had been applied since September 2010.[6] He testified that he became aware at some point of certain stressors Los Banos was experiencing but did not observe them affecting his job performance and did not recall Los Banos telling him that he could not come to work because of his co-worker's suicide or because of family difficulties. At some point in mid-March of 2015, Warden Cabreros's personnel clerk alerted him to Los Banos's excessive absences and presented him with supporting documentation, including leave and attendance records and the

---

[6] Board Member Moepono questioned Warden Cabreros about the extended validity of the MOU and Attendance Program and held the following exchange:

> Q. And then you mentioned in your testimony that the MOU is still current and that it was extended?
>
> A. I know it's -- we're still applying the MOU.
>
> Q. Okay. So if you were to, I guess, take a look at the last paragraph of the MOU, it says that it's effective on September 1st, 2010 and shall remain in effect until June 30, 2011. Is there another document that extends or amends this MOU so it extends beyond June 30th, 2011?
>
> A. I'm not aware of that.
>
> Q. So you've never seen a document.
>
> A. I don't recall, yeah.

dates of LWOP. Warden Cabreros was also informed by his personnel clerk that Los Banos did not have a sufficient number of hours worked in order to qualify him for FMLA leave and exempt him from the Attendance Program for his LWOP absences in 2015. Warden Cabreros ultimately concluded that the LWOP incidents were valid and that Los Banos did not qualify for any exemption from the Attendance Program.

Warden Cabreros did not recall Los Banos making a claim for FMLA leave or for catastrophic illness, injury, or inability to perform activities of daily living and did not submit any medical certification of an impairment for any period of absences from January 4 to March 3, 2015. Warden Cabreros testified that, according to Los Banos's leave records, Los Banos had several hours of vacation time available at the end of 2014 but that he did not request any paid vacation time for his absences from January to March 2015 and, furthermore, a warden does not have discretion to substitute another type of leave to exempt absences from the Attendance Program. Warden Cabreros testified that he was not involved in the grievance process and did not advise anyone in the Union not to pursue Los Banos's grievance.

Los Banos testified that he was informed about the existence and basic content of the MOU at some point in 2010 but was not provided an individual copy of it or any training or explanation from the Union. He was aware that he was required to have read the MOU and to be aware of the specifics of the Attendance Program. He was also aware of the Attendance Program's Required Action schedule contained in the MOU. Los

Banos testified that he had previously been notified of LWOP absences in 2011 and that he had taken FMLA leave in 2013, when he was previously diagnosed with depression and anxiety, and which purportedly allowed him to be exempted from the Attendance Program for those absences.

Los Banos reiterated that his difficult divorce, including related financial troubles, as well as the suicide of two co-workers in 2014, caused him to lose sleep, which affected his ability to work during the early part of 2015. He acknowledged he was absent for twenty LWOP occurrences in 2015 and acknowledged that he was not eligible for FMLA leave prior to March 2015, because he did not meet the minimum hours requirement to receive FMLA benefits prior to that day.[7] He also did not apply for worker's compensation, temporary disability insurance, military leave, catastrophic illness, surgery, critical or serious illness or impairment for the period of absences in 2015. He acknowledged that he was able to care for himself and perform all activities of daily living during the period of his absences in 2015. However, he had anticipated that his absences would be exempted from the Attendance Program, because of his previous exemption when he was granted FMLA leave in 2013, and was surprised to learn after the investigation that he had been resigned.

---

[7] Los Banos also testified that he had applied for FLA leave but that his request was crossed out on the application by someone. However, he understood that he likely did not qualify for FLA because his condition did not fall into any of the eligibility categories.

With respect to the grievance process, Los Banos testified that he became disillusioned with his initial Union representative and later contacted a Division Director who was very reassuring to Los Banos that she would "get [him] back to work." Subsequently, however, he was notified by letter that his grievance had been rejected as of November 2, 2015. He then received a letter dated January 21, 2016, that his grievance had been submitted to arbitration, followed by another letter dated February 1, 2016, that the request for arbitration had been withdrawn. Los Banos was unable to make contact with anyone from the Union from the period of November 2, 2015, to February 1, 2016, and consequently, did not discuss the merits of his case with any representatives during that time.

Following his testimony, Los Banos rested his case. DPS and the Union each expressed the intent to file a motion for reconsideration of the Board's order partially denying their respective motions to dismiss, as well as a motion for a directed verdict. Los Banos objected, asserting that the rule may not "necessarily provide for a motion for reconsideration or a directed verdict at this point in time."

On May 18, 2016, the Union filed a Motion for Reconsideration of Union's Motion to Dismiss Complaint and for Directed Verdict (**Union's Motion to Reconsider and for Directed Verdict**) "pursuant to" Hawaii Administrative Rules (**HAR**) 12-42-8(g)(3)(C) and (g)(16), arguing that the Complaint should be dismissed because, *inter alia*, (1) Los Banos did not dispute, and ultimately admitted, having twenty LWOP incidents in 2015 and

11

that he was not claiming a valid exemption from the Attendance Program MOU, and (2) Los Banos presented no evidence at the hearing of a breach of the duty of fair representation by any Union representative or agent, especially in light of his failure to call as witnesses the Union director or any Union representatives.

On May 19, 2016, DPS filed a Motion for Reconsideration of Board's Order Granting in Part and Denying in Part [DPS's] Motion to Dismiss Prohibited Practice Complaint Filed March 7, 2016 (**Department's Motion to Reconsider**) "pursuant to Rules 7(b), 59(e), and 60(b), of the Hawai'i Rules of Civil Procedure [(**HRCP**)]," asserting that (1) the testimony presented at the hearings on the merits showed a fair application of the FMLA and FLA to Los Banos's leave requests; and (2) DPS properly enforced the terms of the MOU with respect to Los Banos's absences.

Los Banos opposed both motions, arguing primarily that the Board lacked authority to hear motions for reconsideration or directed verdict. Los Banos argued alternatively that the standard for a motion for reconsideration or directed verdict had not been met. He contended that the record supported his claims against both the Union and DPS and warranted additional proceedings.

At a June 2, 2016 hearing, Los Banos again objected to the Board hearing the motions. The Board explained:

> CHAIRMAN KOMATSUBARA: Okay. I'd like to give notice to the parties [that] Hawaii Rules of Civil Procedure, Rule 52(c), judgment on partial findings, might be relevant in this case. . . . And [] the Board has often referred to the Hawaii Rules of Civil Procedure, as long as the rules do not conflict with any rule, existing rule or statute. In fact, there is a provision within the HRCP that states that the

> Board, the Labor Board can look at the rules of Hawaii Rules of Civil Procedure. I think that's Rule 81.

On June 28, 2016, a two-member majority of the Board entered its written Order Granting the [Department's Motion for Reconsideration] and Granting the [Union's Motion for Reconsideration and for Directed Verdict] (**Order Dismissing the Complaint**). The majority stated it would "treat each motion as a Rule 52(c) motion" and "adopts the position taken by the Court in the <u>Furuya</u> case,[8] *i.e.*, the Board is entitled to adopt findings of fact so long as they are 'plausible in light of the record,' and the Board is not required to weigh and evaluate evidence in a light favoring the complainant." (Footnote omitted).

The majority then found that:

> The MOU is a non-disciplinary, "no fault" approach to improve attendance . . . . [I]t was agreed that the disciplinary approach taken in [] Sections 37.17b.4.c and 38.11c.2 of the Unit 10 Collective Bargaining Agreement effective as of July 1, 2013 (Unit 10 CBA) would be modified in the MOU.[1]
>
> > [1] Los Banos is a member of Unit 10 and is represented by [the Union]. <u>The parties do not dispute that the Unit 10 CBA was in effect at the time of his termination. The parties also do not dispute that the [Attendance Program] MOU was implemented on September 1, 2010, extended by mutual agreement between DPS and [the Union] and in effect at the time of Los Banos's resignation.</u>

(Emphasis added). The majority also found that (1) Los Banos was absent without pay for twenty days in early 2015 and did not qualify for any exemptions under paragraphs 8 or 9 of the MOU; (2) DPS "performed all of the required actions as set forth in the MOU, including all notice requirements to Los Banos of his required resignation;" and (3) the Union properly represented Los

---

[8] <u>Furuya v. Ass'n of Apartment Owners of Pacific Monarch, Inc.</u>, 137 Hawai'i 371, 375 P.3d 150 (2016) (discussing the standard for HRCP Rule 52(c)).

Banos in the grievance process. Accordingly, the majority concluded that Los Banos could not establish a prohibited practices claim against either DPS or the Union.

On June 30, 2016, Board Member Moepono filed a dissenting opinion on the basis that "there was no revised MOU submitted as evidence showing that it was extended beyond June 30, 2011" and that the Board failed to enter any findings or conclusions that the MOU was valid. Board Member Moepono cited, *inter alia*, HRS § 89-10(a) (2012)[9] and concluded that, without evidence of a written agreement to extend the MOU, the Board should not have granted a motion for directed verdict.

C.    Appeal to the Circuit Court

On appeal to the Circuit Court, Los Banos argued, *inter alia*, that the Board violated his rights by enforcing an expired MOU and by modifying its procedural rules during the course of a

---

[9]    HRS § 89-10(a) provides:

> **§ 89-10    Written agreements; enforceability; cost items.** (a) Any collective bargaining agreement reached between the employer and the exclusive representative shall be subject to ratification by the employees concerned, except for an agreement reached pursuant to an arbitration decision. Ratification is not required for other agreements effective during the term of the collective bargaining agreement, whether a supplemental agreement, an agreement on reopened items, or a memorandum of agreement, and any agreement to extend the term of the collective bargaining agreement. The agreement shall be reduced to writing and executed by both parties. Except for cost items and any non-cost items that are tied to or bargained against cost items, all provisions in the agreement that are in conformance with this chapter, including grievance procedure and an impasse procedure culminating in an arbitration decision, shall be valid and enforceable and shall be effective as specified in the agreement, regardless of the requirements to submit cost items under this section and section 89-11.

contested case hearing. In opposition, DPS argued that HRCP Rule 81 mandates application of the HRCP to labor dispute proceedings before the Board and that, because Los Banos did not contest the MOU's validity and effective date before the Board, he waived this argument. The Union similarly argued that the Board complied with all applicable administrative rules and asserted that there was sufficient evidence in the Board's record that the MOU had been validly extended by the parties.

Following an April 20, 2017 hearing, the Circuit Court entered its May 19, 2017 Order Remanding to the Board. The Circuit Court determined:

> [F]irst, that the Board's Order does not contain a determination that the MOU was validly extended and thus applied to [Los Banos]'s absences in this case; and, second, that there is a substantial question as to whether the MOU was validly extended so as to apply to [Los Banos]'s absences in this case.

The Circuit Court cited the expiration language in the MOU and concluded that, by its own terms, the MOU would not apply to Los Banos's absences in 2015 "unless the MOU had been extended." The Circuit Court noted that while the Nakanelua Declaration attested to the MOU's extension by mutual consent, it had not been received into evidence for the purpose of the hearing on the merits.[10] The Circuit Court also determined that Warden Cabreros was not qualified to testify as to any agreement between the Union and DPS to extend the MOU. We note that Warden

---

[10]     The Circuit Court further referenced that a declaration from Colleen Miyasato, a human resources officer with DPS, also was not received into evidence. In any case, that declaration merely stated that the Union and DPS "have continued to observe the provisions of the MOU to the present day."

Cabreros testified that DPS was still applying the MOU, but that he was not aware of another document that extended it beyond June 30, 2011. The Circuit Court concluded:

> In the absence of a finding of fact or mixed finding of fact and conclusion of law based upon substantial evidence that the MOU had been validly extended to apply to [Los Banos]'s absences, it cannot be concluded that the MOU applied to [Los Banos]'s absences in this case.
>
> It is noted that "[a] remand is proper where an agency has made invalid, inadequate or incomplete findings." In re Kauai Elec. Div. of Citizens Util. Co., 60 Haw. 166, 185 (1978); quoting McQuay v. Delaware Alcoholic Beverage Control Commission, 338 A.2d 129 (Del. 1975).
>
> Therefore, it is appropriate to have this matter remanded to the Board for the Board to address the issue of whether the MOU was validly extended to apply to [Los Banos]'s absences. The Board's determination on this issue may materially impact the Board's findings of fact and conclusions of law under the Board's Order and it is appropriate to vacate the Board's Order.

With respect to the Board's application of Rule 52(c) to grant a directed verdict during the Board proceeding, the Circuit Court concluded that the Board should not be allowed to resort to HRCP Rule 52(c) without complying with the "appropriate mechanism" for the Board to adopt a new procedural rule. The Circuit Court rejected the argument that HRCP Rule 81 mandates the application of the HRCP to Board proceedings, because the HRCP only apply to actions in circuit courts or to appeals therefrom. The Circuit Court noted that the Board "is not harmed by this determination" because the Board's decision and order "must be accompanied by separate findings of fact and conclusions of law." Accordingly, the Circuit Court vacated the Board's Order Dismissing the Complaint and remanded the case, ordering the Board to address the issue of whether the MOU was validly

extended to apply to Los Banos's absences and to enter appropriate findings of fact and conclusions of law in support of its decision.

On June 15, 2017, the Circuit Court entered the Judgment. On June 16, 2017, the Union timely filed a notice of appeal.

II. POINTS OF ERROR

On appeal to this court, the Union asserts three points of error, contending that the Circuit Court erred by: (1) "assuming subject matter jurisdiction" to review the validity of the MOU and its extension; (2) vacating the Board's decision without considering the standard for judicial review of a "hybrid" claim against an employer and an employee organization; and (3) determining that the Board failed to comply with the HAR in its application of HRCP Rule 52(c) to the Board proceeding.

III. APPLICABLE STANDARDS OF REVIEW

"Review of a decision made by the circuit court upon its review of an agency's decision is a secondary appeal[,] . . . in which this court must determine whether the circuit court was right or wrong in its decision, applying the standards set forth in HRS § 91-14(g)." Preble v. Bd. of Trustees of Emps.' Ret. Sys. of Haw., 111 Hawai'i 498, 503, 143 P.3d 37, 42 (2006) (citation and internal quotation marks omitted)).

HRS § 91-14(g) (Supp. 2017) provides:

> (g) Upon review of the record, the court may affirm the decision of the agency or remand the case with instructions for further proceedings; or it may reverse or

modify the decision and order if the substantial rights of the petitioners may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:

   (1)   In violation of constitutional or statutory provisions;

   (2)   In excess of the statutory authority or jurisdiction of the agency;

   (3)   Made upon unlawful procedure;

   (4)   Affected by other error of law;

   (5)   Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or

   (6)   Arbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Under HRS § 91-14(g), conclusions of law are reviewable under subsections (1), (2), and (4); questions regarding procedural defects are reviewable under subsection (3); findings of fact are reviewable under subsection (5); and an agency's exercise of discretion is reviewable under subsection (6). Preble, 111 Hawai'i at 503, 143 P.3d at 42.

IV.   DISCUSSION

    A.   The MOU

The Union contends that the Circuit Court erred by "assuming subject matter jurisdiction" over the issue of whether the MOU had been validly extended. The Union argues that Los Banos failed to exhaust his contractual and administrative remedies with respect to this issue by failing to raise it in either his grievance to DPS or in his Complaint before the Board and that, consequently, the Circuit Court did not have the authority to vacate the Board's order and remand the case for consideration as to the validity of the extension of the MOU.

As an initial matter, we note that the Circuit Court did not conclude that the Board erroneously determined that the MOU was validly extended and in effect. Rather, the Circuit Court concluded that the Board's findings and conclusions were inadequate to support its ultimate determination that Los Banos was properly resigned pursuant to the Attendance Program that was set forth in the MOU and that remand to the Board was therefore necessary. The question before this court, therefore, is whether the Circuit Court erred in concluding that the Board's findings and conclusions were inadequate.

Pursuant to HRS § 91-12 (2012), "[e]very decision and order adverse to a party to the proceeding, rendered by an agency in a contested case, shall be in writing or stated in the record and shall be accompanied by separate findings of fact and conclusions of law[.]" See also HRS § 89-5(e) (Supp. 2017) ("All decisions of the [B]oard shall be reduced to writing and shall state separately its finding of fact and conclusions."). To be sufficient to support an order, the agency's findings of fact must include the "basic facts, from which the ultimate facts in terms of the statutory criterion are inferred." In re Kauai Elec. Div. of Citizens Utils. Co., 60 Haw. 166, 184, 590 P.2d 524, 537 (1978) (**Kauai Electric**) (citation omitted). The reviewing court should ensure that the agency's findings and conclusions are sufficiently clear to allow the reviewing court to track the steps by which the agency reached its decision. In re Hawai'i Elec. Light Co., 145 Hawai'i 1, 11, 445 P.3d 673, 683

19

(2019) (quoting Kauai Springs, Inc. v. Planning Comm'n of Cty. of Kauai, 133 Hawai'i 141, 164, 324 P.3d 951, 974 (2014)). Otherwise, "remand is proper where an agency has made invalid, inadequate or incomplete findings." Kauai Electric, 60 Haw. at 185, 590 P.2d at 538 (citation omitted); Lanai Co. v. Land Use Comm'n, 105 Hawai'i 296, 314, 316, 97 P.3d 372, 390, 392 (2004) (recognizing that HRS § 91-14(g)(4) allows for remand of an agency decision "affected by other error of law," which includes decisions with unclear or insufficient findings).

In Lanai Co., for example, the Land Use Commission (**LUC**) entered an order requiring a resort company not to use potable water from a nearby aquifer to irrigate its golf course. 105 Hawai'i at 300, 97 P.3d at 376. Later, following the issuance of an order to show cause and a hearing, the LUC entered a second order against the resort company, ultimately concluding that the company had violated the LUC's prior order not to use potable water. Id. at 305, 97 P.3d at 381. The LUC found, in relevant part, that the resort company "primarily" utilized a non-potable source but did not expressly find that the company used any potable water. Id. at 315, 316, 97 P.3d at 391, 392. In remanding the order to the LUC, the supreme court determined that while the LUC made "findings [] relevant to the issue of whether potable water is being used, the LUC [made] no specific finding or conclusion as to whether [the resort company] was using potable water." Id. at 316, 97 P.3d at 392 (emphasis added). The supreme court explained that although the LUC's

20

findings "impl[ied]" that the company was using potable water, it did not include in its order any "express findings in this regard." Id. Citing, inter alia, Kauai Electric and HRS § 91-14, the supreme court remanded the case with instructions to the LUC for clarification of its findings and conclusions, or for further hearings if necessary. Id. at 316-17, 97 P.3d at 392-93.

In the instant case, the Board's ultimate conclusion that DPS complied with the terms of the MOU and Attendance Program required a supporting determination that the MOU was in effect during the relevant time period, i.e., January to June of 2015. However, unless the parties to the MOU had mutually agreed to extend the duration of the MOU, it expired by its own terms on June 30, 2011.[11] Consequently, the existence of a mutual agreement between DPS and the Union to extend the duration of the MOU was a "basic fact" the Board was required to find in order to support its conclusion that the MOU remained in effect for the relevant period, as well as its ultimate conclusion that Los Banos could not establish a prohibited practice claim against either DPS or the Union under HRS § 89-13. See Kauai Electric, 60 Haw. at 184-85, 590 P.2d at 537.

We note the Board's remarks prior to the hearing that "there may be questions as to the validity of the MOU at the time of its application to Mr. Los Banos" as well as its expectation

---

[11] As noted above, in the dissenting opinion, Board Member Moepono stated that an agreement to extend the term of the MOU must be in writing pursuant to HRS § 89-10(a).

that the Union or the DPS would "establish its validity" for the period at issue. However, neither the Union nor DPS offered any evidence of an agreement to extend the MOU, and the Board made no findings or conclusions as to the existence of an agreement to extend the MOU or its continued validity during the period of Los Banos's absences and resignation.

We conclude that the Circuit Court did not err in its determination that the Board's findings and conclusions with respect to the applicability of the MOU beyond its expiration date were inadequate. Especially in light of the Board's remarks concerning the questionable applicability of the MOU to Los Banos, we cannot conclude that the Board's findings are "sufficient to allow the reviewing court to track the steps by which the agency reached its decision." See Hawai'i Elec. Light Co., 145 Hawai'i at 11, 445 P.3d at 683; Lanai Co., 105 Hawai'i at 314, 97 P.3d at 390 ("The parties and the court should not be left to guess, with respect to any material question of fact, or to any group of minor matters that may have cumulative significance, the precise finding of the agency.") (citing In re Water Use Permit Applications (Waiahole), 94 Hawai'i 97, 158, 9 P.3d 409, 470 (2000) (internal quotation marks omitted)). The Board simply found that "the parties [] do not dispute that the MOU was implemented on September 1, 2010, extended by mutual agreement between [DPW] and [the Union] and in effect at the time of Los Banos's resignation." This finding relates only to whether the MOU was disputed to have been in effect at the time

22

of Los Banos's *resignation* but does not address its effect at that time of his *absences*. More importantly, a finding that Los Banos did not dispute the continued effect of the MOU is not a finding that DPS and the Union had, in fact, entered into an agreement to extend the MOU. Under the circumstances here, the Board was required to make an express finding supporting the continued applicability of the MOU. See Lanai Co., 105 Hawai'i at 316, 97 P.3d at 392.

Accordingly, we conclude that the Circuit Court did not err in its decision to vacate the Board's Order Dismissing the Complaint and remand for the Board's entry of adequate findings in support of its conclusions.

B. Judicial Review of a Hybrid Claim

The Union contends that the Circuit Court erroneously failed to conduct judicial review under the standards applicable to a prohibited practices claim against both an employer and a union, which is known as a "hybrid claim."[12]

---

[12] This court has previously stated:

> Such an action, known as a "hybrid action" consists of two separate claims: (1) a claim against the employer alleging a breach of the collective bargaining agreement and (2) a claim against the union for breach of the duty of fair representation. These two claims are "inextricably interdependent," in that for an employee alleging wrongful termination to prevail against either the employer or the union, the employee must not only show that his or her termination violated the collective bargaining agreement, but must also show that the union breached its duty of fair representation by not pursuing the employee's grievance.

Lee v. United Pub. Workers, Local 646, 125 Hawai'i 317, 321, 260 P.3d 1135, 1140 (App. 2011) (quoting Vaca v. Sipes, 386 U.S. 171, 186 (1967)) (some internal quotation marks omitted); see also Poe v. Hawaii Labor Relations Bd., 105 Hawai'i 97, 102, 94 P.3d 652, 657 (2004).

23

The Union argues that the Circuit Court neglected to review the Order Dismissing the Complaint on the merits, by "focus[ing] entirely on an extraneous and immaterial issue to a hybrid claim, *i.e.*, whether there was a violation of Section 89-10(a), HRS, by extending the MOU beyond June 30, 2011." According to the Union, "[t]hat statutory question has absolutely nothing to do with whether the [U]nion breached its duty to (sic) fair representation to Los Banos." The Union appears to contend that, even if the MOU was not in effect, the Circuit Court should have concluded that there was insufficient proof that the union breached its duty of fair representation by not pursuing Los Banos's grievance.

The Circuit Court recognized that "there is a substantial question as to whether the MOU was validly extended so as to apply to [Los Banos]'s absences in this case." However, the Circuit Court did not address the merits of the "statutory question" of the MOU's extended validity. Instead, the Circuit Court focused on the sufficiency of the Board's findings in light of the evidence presented – specifically the expiration language in the MOU – to conclude that remand was necessary for the Board to adequately address the issue in the first instance.

Moreover, because the Board's findings with respect to the applicability of the MOU to Los Banos were inadequate, the Circuit Court had no basis on which to review the Board's ultimate decision on the merits of Los Banos's hybrid claim, including his claim that the Union's representation of him was

24

inadequate. See Kauai Electric, 60 Haw. at 186, 590 P.2d at 538 (holding that, without sufficient findings and conclusions, the court had no basis on which to review the agency's order). It is precisely those circumstances in which the reviewing court should decline to review the merits of an agency's order, especially considering the court has the authority to remand the case for the entry of sufficient findings to enable judicial review. Id. at 185, 186, 590 P.2d at 537, 538. Under these circumstances, we conclude that the Union's second point of error is without merit.

C.    The HRCP Rule 52(c) Issues

After indicating that the Order Dismissing the Complaint would be vacated, and that the case would be remanded to the Board to address the issue of whether the MOU was applicable to Los Banos's absences and enter appropriate findings and conclusions, the Circuit Court offered "comments" on the Board's granting of directed verdicts in favor of DPS and the Union under HRCP Rule 52(c). The Circuit Court ultimately concluded that a fair process might include the application of HRCP 52(c), but in this case, where the Board did not give Los Banos notice that it would apply the rule until after he rested his case, notice from the Board to Los Banos of the rule was not given in a timely manner. The Union argues that the Circuit Court erred in its interpretation and application of applicable rules of practice and procedure and the Board did not violate agency rules of practice and procedure.

25

HAR Title 12, Chapter 42 sets forth the Board's Rules of Practice and Procedure; pertinent to this case, subchapter 1 (which includes HAR §§ 12-42-1 through 12-42-10) states Rules of General Applicability and subchapter 3 (which includes HAR §§ 12-42-41 through 12-42-51) sets forth special rules applicable to Prohibited Practices pursuant to HRS §§ 89-13 and 89-14. See HAR § 12-42-3 (general rules apply to all HRS chapter 89 proceedings and, in any conflict, a special rule governs over a general rule).

The Board did not invoke its own rules in its application of the HRCP to this case. Instead, the Board began by citing an order from a prior, unrelated case decided by the Board and stating: "Although the Board's rules are silent with respect to a motions [sic] to dismiss,[13] reconsideration and directed verdict, the 'Board has previously relied on the [HRCP] to assist in resolving ambiguities in its rules or procedures.'" The Board then stated: "Furthermore, Rule 81(b)(12) of the HRCP specifically extends the application of the HRCP to proceedings before the Board provided that there are no statutes or rules that contradict the HRCP provision that is being applied by the Board." With respect to HRCP 52(c), the Board cited the rule with the following emphasis in italics:

---

[13]     This statement is not entirely accurate as HAR § 12-42-8(g)(3)(B) provides: "Motions to dismiss a case shall be filed at least forty-eight hours before the time of hearing of the case, and shall conform to the requirements in section 12-42-8(g)(3)(C)." HAR § 12-42-8(g)(3)(C) sets forth various procedures related to submission of, response to, and disposition of certain motions.

> (c) **Judgment of partial findings.** If during a trial without a jury *a party has been fully heard on an issue and the court finds against the party on that issue,* the court may enter judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue, or the court may decline to render any judgment until the close of all the evidence. Such a judgment shall be supported by findings of fact and conclusions of law as required by subdivision (a) of this rule.

Finally, the Board cited, *inter alia*, <u>Furuya v. Ass'n of Apartment Owners of Pacific Monarch, Inc.</u>, 137 Hawaiʻi 371, 375 P.3d 150 (2016) (discussing the standard for HRCP Rule 52(c)), for the proposition that "the Board is entitled to adopt findings of fact so long as they are 'plausible in light of the record,' and the Board is not required to weigh and evaluate the evidence in a light favoring the complainant."

The Circuit Court's comments regarding the Board's interpretation of HRCP Rule 81(b)(12)[14] are as follows:

---

[14] HRCP Rule 81 provides in part:

**Rule 81. APPLICABILITY.**

(a) **To what proceedings not applicable.** Except as expressly otherwise provided in this Rule 81 or another rule of court, these rules shall not apply to the following proceedings (pursuant to specific provisions of the Hawaiʻi Revised Statutes when cited below) in any circuit court:
  (1) Probate proceedings under chapter 560;
  (2) Guardianship proceedings under chapter 551;
  (3) Ex parte proceedings with respect to the accounts of trustees and guardians under chapter 554;
  (4) Proceedings in the family court;
  (5) Applications to a circuit court under chapter 658A, relating to arbitration, and proceedings thereon prior to judgment;
  (6) Habeas corpus proceedings under chapter 660;
  (7) Proceedings seeking a writ directed to a court of inferior jurisdiction under section 603-21.7(b);
  (8) Proceedings for the forfeiture of bonds under section 709-51, as the same may be renumbered;
  (9) Proceedings under section 416-81 relating to the calling of a meeting of a corporation.

(continued...)

First, it is doubtful that Rule 81(b)(12), HRCP, provides authority to allow the Board to use the HRCP in addressing the issues before it. The Judiciary would not

---

[14] (...continued)

        **(b)**   **Other proceedings.** These rules shall apply to the following proceedings except insofar as and to the extent that they are inconsistent with specific statutes of the State or rules of court relating to such proceedings:
        (1)   Proceedings in the land court under chapter 501;
        (2)   Eminent domain proceedings;
        (3)   Actions for partition or to quiet title;
        (4)   Quo warranto proceedings;
        (5)   Escheat proceedings under chapter 665;
        (6)   Proceedings for the forfeiture of property for violation of a statute;
        (7)   Proceedings under section 325-79 to 325-84 relating to isolation of tubercular persons; . . .
        (8)   Actions for the collection of taxes;
        (9)   Proceedings for enforcement of an order, subpoena, or other power of an administrative agency;
        (10)   Proceedings concerning voter registration or elections;
        (11)   Proceedings for the impeachment of a county officer;
        (12)   *Proceedings under:*  section 92-6, relating to public records; chapter 172, relating to foreclosure of liens for commutation and for expenses of determination of boundaries; *chapters 89 and 380, relating to collective bargaining and labor disputes;*  sections 383-34(d), 383-35, 392-79(d), and 392-80, with respect to reconsideration of a determination upon a claim for unemployment benefits or temporary disability benefits; sections 403-192 and 406-51 to 52, relating to banks and trust companies; sections 467-16 to 467-25, relating to collection of a judgment from the real estate recovery fund; section 480-22(a), relating to consent judgments under chapter 480; sections 515-10(e) and 515-14(c), relating to discriminatory practices; part II of chapter 664, relating to fences; and part III of chapter 664, relating to rights of private way and water rights.
        **(c)**   **Jury trial in probate proceedings.** . . .
        **(d)**   **Jury trial in land court proceedings.** . . . .
        **(e)**   **Other appeals to circuit court.** . . .
        **(f)**   **Appeals.** . . .
        **(g)**   **Depositions and discovery.** . . .
        **(h)**   **Order of court.** In any proceeding in the land court or listed in subdivision (a) of Rule 81 the court may by order direct that any one or more of these rules, not otherwise applicable to said proceeding pursuant to this Rule 81, shall be applicable to said proceeding.
        **(i)**   **Applicability in general.** *Except as otherwise provided in Rule 72 or in this Rule 81, these rules shall apply to all actions and proceedings of a civil nature in any circuit court and to all appeals to the appellate courts in all actions and proceedings of a civil nature in any circuit court;* and for that purpose every action or proceeding of a civil nature in the circuit court shall be a "civil action" within the meaning of Rule 2.

(Emphasis underlined and in italics).

28

use its own rules of procedure as a mechanism to direct an agency of the Executive Branch of government to use the Judiciary's rules of procedure in the agency's proceedings. Rather, the agency is to determine what its rules of procedures are but consistent with statutory guidance.

What then is the significance of Rule 81, HRCP to actions under "chapters 89 and 380, relating to collective bargaining and labor disputes"?

Rule 81, HRCP, must be read in light of Rule 1, HRCP. Rule 1, HRCP, states:

> These rules [the "HRCP"] govern the procedure in the circuit courts of the State in all suits of a civil nature whether cognizable as cases at law or in equity with the exceptions stated in Rule 81.

Rule 81(i), HRCP, states:

> *Applicability in general.* Except as otherwise provided in Rule 72 or in this Rule 81, these rules shall apply to all actions and proceedings of a civil nature in any circuit court and to all appeals to the appellate courts in all actions and proceedings of a civil nature in any circuit court; and for that purpose every action or proceeding of a civil nature in the circuit court shall be a "civil action" within the meaning of Rule 2.

A fair reading of these rules indicate that the HRCP are to apply to all civil actions brought in circuit court or on appeal from such actions except as provided for under Rule 72 or Rule 81, HRCP. Rule 81(a), HRCP, sets forth exceptions under which the HRCP does not apply. Rule 81(b), HRCP, identifies matters in which the HRCP is to apply unless the application is inconsistent with "specific statutes of the State or rules of court relating to such proceedings". However, the underlying premise is that the HRCP applies to civil actions or to appeals from those actions.

Perhaps it should be pointed out that, under Rule 81(h), HRCP:

> *Order of the Court.* In any proceeding in the land court or listed in subdivision (a) of Rule 81 the court may by order direct that any one or more of these rules, not otherwise applicable to said proceeding pursuant to this Rule 81, shall be applicable to said proceeding.

Since a proceeding before the Board is not a civil action in circuit court or an appeal therefrom, Rule 81(b), HRCP, cannot be read to mandate the application of the HRCP to Board proceedings.

In the Union's Motion to Reconsider and for Directed

Verdict, the Union cited the HRCP and cases interpreting the HRCP

(as did DPS in the Department's Motion to Reconsider). On appeal to this court, however, the Union does not argue that the Board was right in relying on HRCP Rule 81 or that the Circuit Court was wrong in concluding that HRCP Rule 81 does not mandate the application of the HRCP to Board proceedings. Consistent with the reasons articulated by the Circuit Court, we conclude that the Board was wrong when it stated: "Furthermore, Rule 81(b)(12) of the HRCP specifically extends the application of the HRCP to proceedings before the Board. . . ." With some exceptions, the HRCP apply to civil actions in Hawai'i circuit courts and to appeals from such actions. HRCP Rule 81(b)(12) does not make the HRCP applicable to proceedings before the Board.

The Union contends on appeal that HAR § 12-42-8(g)(3)(A) and (C) grant broad authority to the Board to review and decide motions, during a hearing or at any other time. HAR § 12-42-8(g)(3) provides, in relevant part:

> § 12-42-8 Proceedings before the board. . . .
> . . . .
> (g) Hearings:
> . . . .
> (3) Motions:
> (A) All motions made during a hearing shall be made part of the record of the proceedings.
> (B) Motions to dismiss a case shall be filed at least forty-eight hours before the time of hearing of the case, and shall conform to the requirements in section 12-42-8(g)(3)(C).
> (C) All motions other than those made during a hearing shall be subject to the following:
> (i) Such motions shall be made in writing to the board, shall briefly state the relief sought, and shall be accompanied by affidavits or memoranda setting forth the grounds upon which they are based.
> (ii) The moving party shall serve a copy of all motion papers on all other parties and shall, within three days thereafter, file

with the board the original and five copies with certificate of service on all parties.

(iii) Answering affidavits, if any, shall be served on all parties and the original and five copies, with certificate of service on all parties, shall be filed with the board within five days after service of the motion papers, unless the board directs otherwise.

(iv) The board may decide to hear oral argument or testimony thereon, in which case the board shall notify the parties of such fact and of the time and place of such argument or the taking of such testimony.

In addition to the above, we note the following parts of the rules applicable to the Board:

§ 12-42-2 **Construction of rules.** This chapter shall be liberally construed to effectuate the purpose of chapter 89, HRS, and to secure the just and speedy determination of every proceeding.

§ 12-42-8 **Proceedings before the board.** . . .
. . . .
(g) Hearings:
. . . .
(8) Rules of evidence:
. . . .
(B) All irrelevant, immaterial, or unduly repetitious evidence shall be excluded.
. . . .
(16) The charging party, in asserting a violation of chapter 89, HRS, or this chapter, shall have the burden of proving the allegations by a preponderance of the evidence. The party raising any subsequent issue shall have the burden of proving that issue by a preponderance of the evidence.

The Circuit Court observed that an appropriate mechanism for the Board to adopt one or more HRCP rules would be by rule-making pursuant to statute. See HRS § 91-3 (2012) (setting forth the procedure for adoption, amendment, or repeal of rules). The Circuit Court noted that the Board had, in fact, expressly adopted the application of the HRCP rules applicable to depositions and written interrogatories, but had not expressly adopted HRCP Rule 52(c). See HAR § 12-42-8(g)(6)(A) (re

31

discovery). The Circuit Court noted: "Perhaps a fair process could include the application of Rule 52(c), HRCP, if the Board provides notice that it may apply the rule in a timely manner." The Circuit Court concluded, however, that giving notice to a claimant of the application of the rule after he rests his case "is not timely notice [and therefore] the Board, in this case, should not be allowed to resort to Rule 52(c), HRCP."

The Circuit Court did not err in concluding that, under the circumstances of this case, the Board could not rely on HRCP 52(c) as authority to enter a "directed verdict" in favor of the Union and DPS, and against Los Banos. The Board's own rules, however, provide for a liberal construction to effect the purpose of HRS chapter 89 and "to secure the just and speedy determination of every proceeding." HAR § 12-42-2. The Board's rules also provide, without limitation, for motions to be made during a hearing, so long as such motions are made part of the record of the proceedings. HAR § 12-42-8(g)(3)(A). While the Board's rules require that motions to dismiss be filed in advance of the hearing of the case on the merits, and comply with other requirements, it is undisputed that the Union's initial Motion to Dismiss complied with those requirements. HAR § 12-42-8(g)(3)(B) & (C). Applicable rules also confirm that Los Banos has the burden of proving his allegations of prohibited practices by a preponderance of the evidence and this court applies a clearly erroneous standard to the Board's findings. HAR § 12-42-8(g)(16) and HRS § 91-14(g)(5). And, finally, the Board's rules require

32

("shall be excluded") the exclusion of irrelevant, immaterial, or unduly repetitious evidence, and mandate just and speedy determination of proceedings. HAR §§ 12-42-2 & 12-42-8(g)(8)(B).

Thus, a harmonious reading of the Board's rules permits the Board to hear motions akin to a motion for a directed verdict, so long as the party opposing the motion is given a full and fair opportunity to be heard on the motion after reasonable notice, and the rules applicable to the Board are not otherwise violated. The reference to established court rules and cases interpreting such rules *as guidance* in applying the Board's own rules of practice and procedure is generally permissible. See, e.g., Hyland v. Gonzales, 139 Hawai'i 386, 393, 390 P.3d 1273, 1280 (2017). Court rules and related case law, however, do not govern agency proceedings, except through the proper adoption of a rule or amendment authorized by law. See HRS §§ 91-3 & 91-9. Reliance on case law interpreting court rules, as opposed to the statutes, administrative rules, and cases directly applicable to an agency's proceedings may in some instances lead to an improper procedure or an erroneous conclusion.

In this case, although the Board erred in concluding that HRCP Rule 52(c), and related case law, was applicable to its proceedings pursuant to HRCP Rule 81(b)(12), the Board did not err in considering and ruling on the Union's motion.

V. CONCLUSION

On the grounds stated above, the Circuit Court's June 15, 2017 Judgment is affirmed, and this case is remanded to the

33

Board for further proceedings consistent with this Memorandum Opinion.

DATED: Honolulu, Hawaiʻi, November 22, 2019.

On the briefs:

Herbert R. Takahashi,
Rebecca L. Covert,
(Takahashi and Covert),
for Union-Appellee-Appellant.

Ted H.S. Hong,
for Appellant-Appellee.

Presiding Judge

Associate Judge

Associate Judge